UNITED STATES of America, Appellee,

v.

Eric N. UNGER, Defendant, Appellant.

No. 90–1457.

United States Court of Appeals,
First Circuit.

Heard Sept. 5, 1990.
Decided Sept. 28, 1990.

Robert B. Mann with whom Mann & Mitchell was on brief for defendant, appellant.

Margaret E. Curran, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., was on brief for U.S.

Before BREYER, Chief Judge, VAN GRAAFEILAND,* Senior Circuit Judge, and SELYA, Circuit Judge.

---

\* Of the Second Circuit, sitting by designation.

1. The second count of the indictment charged Unger, in consort with two others, with violation of 18 U.S.C. § 661 (1988). That count was dismissed on the government's motion at the time sentence was imposed.

SELYA, Circuit Judge.

We today confront yet another appeal implicating the federal sentencing guidelines. In this case, defendant-appellant Eric N. Unger and two confederates broke into a home located on the grounds of the Newport, Rhode Island navy base, stealing certain items. Unger was charged under the Assimilative Crimes Act and eventually pled guilty to one count of unlawful entry into a dwelling with intent to commit larceny. R.I.Gen.Laws § 11–8–3 (1981), *as incorporated by* 18 U.S.C. § 13 (1988).[1]

The district court undertook to calculate the guideline sentencing range. *See* U.S. S.G. § 1B1.1 (rev.ed. 1989); *see also United States v. Diaz–Villafane*, 874 F.2d 43, 47–48 (1st Cir.) (explaining method of computation under federal sentencing guidelines), *cert. denied*, —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989); *United States v. Wright*, 873 F.2d 437, 440 (1st Cir.1989) (similar). After making appropriate adjustments, the court set the total offense level corresponding to the statute of conviction at 15. The court then considered defendant's criminal history category, selecting category V, and sentenced Unger to 46 months imprisonment (the very peak of the applicable range, *see* U.S.S.G. ch. 5, Pt. A. (1989) (sentencing table)), plus a term of supervised release.

On appeal, Unger does not dispute the court's calculation of the offense level but contests the 10 criminal history points (CHPs) which, cumulatively, placed him in category V. Despite the cataract of arguments put forth by appellant's counsel, we are convinced that the district court's determination was legally correct.

## I

Unger contends that the district court erroneously assessed two CHPs on account of a juvenile adjudication. While not attacking the constitutional validity of the uncounseled conviction,[2] appellant assever-

2. A constitutionally invalid prior conviction cannot be the basis for increasing a defendant's criminal history score. U.S.S.G. § 4A1.2, application note 6.

ates that, under *Baldasar v. Illinois,* 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), the conviction should not have been used for purposes of tabulating his criminal history score. We review the evidence.

In 1986, Unger was charged as a juvenile with receiving stolen goods worth less than $500. The chronology is important: his arraignment occurred on August 25; the disposition hearing began on September 15 and was continued to September 29, when it was concluded. He was not represented by counsel during these proceedings. Having admitted sufficient facts, Unger was given a one-year suspended sentence at the Rhode Island Training School and a year's probation. In 1987, he was charged with violating his probation. Though represented by an attorney on that occasion, he again admitted sufficient facts and was remanded to the Training School until mid–1988 (a period of almost 11 months).

The Rhode Island Family Court records indicate that the defendant was advised of, and waived, his right to counsel at arraignment. The records are not explicitly revelatory as to waiver in September 1986 (at the time of sentencing). The district court found that appellant's original waiver of counsel endured and assessed two CHPs in respect of the 1986 adjudication.[3]

■ Any valid previous conviction falling within the provisions of Chapter Four of the guidelines is to be considered in computing the criminal history score. *See* U.S.S.G. § 4A1.2, application note 6. When the government seeks to have a prior conviction included in the score, it bears an initial burden of proving the fact of conviction. *United States v. Newman,* 912 F.2d 1119, 1122 (9th Cir.1990). This burden will ordinarily be satisfied by production of a certified copy of the conviction or an equivalent proffer. Once the government's threshold burden has been met, the conviction is pre-

sumed valid for purposes of applying the sentencing guidelines. The burden then shifts to the defendant to establish that the earlier conviction was constitutionally infirm, *see* U.S.S.G. § 4A1.2, application note 6 ("[c]onvictions *which the defendant shows* to have been constitutionally invalid may not be counted in the criminal history score") (emphasis supplied); *see also Newman* 912 F.2d at 1121; *United States v. Brown,* 899 F.2d 677, 679 (7th Cir.1990); *United States v. Davenport,* 884 F.2d 121, 124 (4th Cir.1989); *United States v. Dickens,* 879 F.2d 410, 411 (8th Cir.1989), or otherwise ineligible to be the basis for an upward adjustment. *See United States v. Jones,* 907 F.2d 456, 464 (4th Cir.1990) (burden is on defendant to show state conviction "invalid to the extent it might be used to increase a federal sentence").

■ Applying these rules to the case before us—a case where the prosecution put in *prima facie* evidence of the previous conviction—appellant bore the burden of showing the ineligibility of the conviction. Extrapolating from principle to practice, Unger had to prove (1) that he was entitled to representation at the sentencing phase of the juvenile adjudication, (2) that he lacked counsel at that juncture and had not waived his right in such regard, and (3) that, on the facts established, the law prohibited using the adjudication to boost his criminal history score.

■ The first part of this assignment is easily fulfilled. The government concedes that defendant was constitutionally entitled to counsel at the 1986 sentencing, and we rely, as did the district court, on the correctness of that assumption. The next hurdle, however, is not so serenely scaled. That a juvenile conviction was uncounseled does not render it invalid; if the right to counsel was made clear, and was sentiently waived, the absence of counsel would not in

---

**3.** The assessment was premised on U.S.S.G. § 4A1.2(d)(2)(A), which instructs the reader to "add 2 points under § 4A1.1(b) for each adult or juvenile sentence of confinement of at least sixty days if the defendant was released from such confinement with five years of his commencement of the instant offense." Because Unger's immurement at the Training School exceeded

sixty days and occurred less than five years before the events underlying the crime charged in this case, section 4A1.2(d)(2)(A) applies on its face. *See United States v. Williams,* 891 F.2d 212, 215–16 (9th Cir.1989) (commitment to juvenile hall is "confinement" for purposes of § 4A1.2(d)(2)(A)), *cert. denied,* — U.S. —, 110 S.Ct. 1496, 108 L.Ed.2d 631 (1990).

and of itself forestall use of the ensuing conviction in tabulating the defendant's criminal history score. *See, e.g., United States v. Poff,* 723 F.Supp. 79, 81 (N.D.Ind. 1989).

Whether a defendant has knowingly and intelligently waived counsel is a mixed question of law and fact. *Brewer v. Williams,* 430 U.S. 387, 403, 97 S.Ct. 1232, 1241, 51 L.Ed.2d 424 (1977). Where, as here, the lower court, applying the right rule of law, has found a waiver, the defendant has the burden of showing the finding to be clearly erroneous. *See* 18 U.S.C. § 3742(d) (1988). *Compare, e.g., United States v. Royer,* 895 F.2d 28, 29 (1st Cir. 1990); *Diaz–Villafane,* 874 F.2d at 48; *Wright,* 873 F.2d at 443–44. In the instant case, the district court found that Unger waived counsel at the time of his sentencing in 1986. That finding was based on Unger's acknowledged waiver of rights at the arraignment, fortified by the fact that Unger's lawyer, on the occasion of the probation violation hearing, did not contend that his client had been impermissibly deprived of counsel at sentencing.

In our view, the district court's finding was not clearly erroneous. To be sure, waiver cannot be presumed from a silent record, without more. *See Burgett v. Texas,* 389 U.S. 109, 114–15, 88 S.Ct. 258, 261–62, 19 L.Ed.2d 319 (1967). But this case is of a considerably different stripe. Here, the record is far from silent: the Family Court file clearly indicates that appellant was advised of, and waived, his right to counsel when he was arraigned. From that circumstance—and in the absence of any evidence of an intervening event—the district court was free to find the waiver to be in force the following month at, and during, Unger's sentencing. *See, e.g., White v. United States,* 354 F.2d 22, 23 (9th Cir.1965) (waiver at time of plea car-

ried over to time of sentencing); *Harig v. Wolff,* 414 F.Supp. 290, 295–96 (D.Neb. 1976) (knowing waiver of counsel at arraignment operated as continuing waiver until time of sentencing). And the reinforcing circumstance mentioned by the court below—counsel's failure to raise a question in this respect at the violation hearing—helps to make its finding impervious to clear-error attack. *Cf., e.g., Brown,* 899 F.2d at 679–80 (judge can look to custom and practice of court and trial attorneys to refute allegation of procedural infirmity); *Dickens,* 879 F.2d at 411–12 (similar). The juvenile court adjudication was properly counted.[4]

## II

A guideline provision, U.S.S.G. § 4A1.2(c)(2), directs that previous sentences for juvenile "status offenses" must not be counted in arriving at a defendant's criminal history score. Relying on this proviso, Unger contends that the district court incorrectly assessed six CHPs referable to three juvenile adjudications in which he was found "wayward." *See* R.I.Gen.Laws § 14–1–3(G) (1981 & Supp.1989) (defining "wayward"). The defendant asserts that, by virtue of Rhode Island law, *see, e.g.,* R.I.Gen.Laws § 14–1–40 (1981 & Supp. 1989), waywardness should be deemed a "status offense" for purposes of section 4A1.2(c)(2).

We reject outright the idea that state law determines whether an offense runs afoul of section 4A1.2(c)(2), *accord United States v. Martinez,* 905 F.2d 251, 253 (9th Cir.1990),[5] and thus decline appellant's invitation to plumb the nuances of Rhode Island's statutory scheme. Were state classifications to govern the meaning of terms in the sentencing guidelines, the primary purpose of the Sentencing Reform

---

4. Because we uphold the district court's finding that Unger knowingly and intelligently waived his right to counsel, we need not explore the interrelationship between the *Baldasar* doctrine and the sentencing guidelines.

5. Although we agree with the Ninth Circuit that state law does not govern the classification of offenses for purposes of § 4A1.2(c), we eschew

the majority approach in *Martinez,* which determined the categorization question by resort to a "consensus" of American jurisdictions. *Martinez,* 905 F.2d at 253–54. We share instead Judge Wallace's view, *id.* at 255–56 (Wallace, J., concurring), that the question is one of federal law, pure and simple.

Act, namely, to "provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records," 28 U.S.C. § 991(b)(1)(B) (1988), would be severely undermined. *See also United States v. Aguilar–Pena,* 887 F.2d 347, 353 (1st Cir.1989) (warning that actions which "promote[ ] regional disparity in sentencing ... fly[ ] in the teeth of the guidelines"). Indeed, the guidelines themselves strongly suggest that a state's taxonomy should not be given controlling effect. *See* U.S.S.G. § 4A1.1, application note 5 ("[t]o minimize problems with imperfect measures of past crime seriousness, criminal history categories are based on the maximum term imposed in previous sentences rather than on other measures, such as whether the conviction was designated a felony or misdemeanor"). The classification of an offense as within or without the ambit of section 4A1.2(c) as a whole, or either of its subsections,[6] is a question of federal law, not state law, notwithstanding that the predicate offense and punishment are defined by state law. *Cf. Dickerson v. New Banner Inst., Inc.,* 460 U.S. 103, 111–12, 103 S.Ct. 986, 991, 74 L.Ed.2d 845 (1983) ("conviction" for purposes of 18 U.S.C. §§ 922(g) & (h) is a matter of federal law).

■ Having selected the appropriate yardstick, we take the measure of appellant's contention. We believe that, to ascertain the scope of section 4A1.2(c)(2), we should look to the substance of the underlying state offense in order to determine whether it falls within the proscription. *See United States v. Rangel–Navar-*

ro, 907 F.2d 109, 110 (9th Cir.1990); *Martinez,* 905 F.2d at 255 (Wallace, J., concurring). In this case, the conduct underlying defendant's three juvenile adjudications consisted of (1) breaking and entering with intent to commit larceny, (2) receiving stolen goods, and (3) assault and battery. Under no stretch of the imagination can these malefactions be considered "status offenses" like, say, hitchhiking, truancy, loitering, or vagrancy. Nor can the fact that the Rhode Island Family Court adjudged the defendant "wayward" in response to this behavior transmogrify his wrongful acts into status offenses for purposes of the sentencing guidelines. The district court did not err in assessing two CHPs for each of these juvenile offenses under section 4A1.2(d)(2)(A).

### III

■ The last arrow from the defendant's quiver flies equally wide of the mark. The sentencing judge must "[a]dd 2 points if the defendant committed the instant offense less than two years after release from imprisonment on a sentence counted under (a) or (b) [of § 4A1.1]...." U.S.S.G. § 4A1.1(e). In this case, the offense of conviction was committed on December 30, 1988, well within two years of Unger's release from the Rhode Island Training School. *See supra* p. 3. Appellant nonetheless argues that section 4A1.1(e) should not apply to sentences imposed for juvenile offenses.

The argument merits little discussion. Juvenile sentences are each assessed two

---

**6.** U.S.S.G. § 4A1.2(c) reads in pertinent part: ... Sentences for misdemeanor and petty offenses are counted [in compiling an offender's criminal history score], except as follows:
(1) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are counted only if (A) the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense:
Contempt of court
Disorderly conduct or disturbing the peace
Driving without a license or with a revoked or suspended license
False information to a police officer
Fish and game violations
Gambling
Hindering or failure to obey a police officer
Local ordinance violations
Non-support
Prostitution
Resisting arrest
Trespassing
(2) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are never counted:
Hitchhiking
Juvenile status offenses and truancy
Loitering
Minor traffic infractions
Public intoxication
Vagrancy.

CHPs under section 4A1.1(b). *See* U.S.S.G. § 4A1.2(d)(2)(A). By its terms, section 4A1.1(e) applies, *inter alia*, to "sentence[s] counted under [4A1.1(b)]." The defendant does not seriously contend that his juvenile conviction was improperly counted under section 4A1.2(d)(2)(A) and, by reference, under section 4A1.1(b); indeed, any such contention would be specious on its face. It follows inexorably that the two-point enhancement under section 4A1.1(e) was properly assessed. *Accord United States v. Kirby*, 893 F.2d 867, 868 (6th Cir.1990) (per curiam) (two-point enhancement for juvenile conviction properly awarded under § 4A1.1(e)). Section 4A1.1(e), after all, is explicitly keyed to section 4A1.1(b).

We will not belabor the obvious. Because the defendant committed the instant offense less than two years after leaving the Training School, the district court correctly included two additional CHPs under section 4A1.1(e).

## IV

We need go no further. We are unable to discern any legal error in the district court's computation of Unger's criminal history score. Accordingly, the sentence imposed was within the appropriate guideline sentencing range. The judgment below must, therefore, be

*Affirmed.*