# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1583

_____

United States of America,        *
        *
        Appellee,        *
        *   Appeal from the United States
        v.        *   District Court for the
        *   Western District of Missouri
Eddie P. Roberts,        *
        *
        Appellant.        *

_____

Submitted:  November 14, 2000

Filed:  May 25, 2001

_____

Before McMILLIAN, RICHARD S. ARNOLD, and BOWMAN, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Eddie P. Roberts appeals from a final judgment entered in the United States District Court for the Western District of Missouri upon a jury verdict finding him guilty of bank robbery, in violation of 18 U.S.C. §§ 2113(a) and 2. Roberts was sentenced to 112 months imprisonment and three years supervised release, and he was ordered to pay a special assessment of $100. United States v. Roberts, No. 99-0099-02-CR-W-4 (W.D. Mo. Jan. 20, 2000) (judgment). For reversal, Roberts argues that the district court (1) abused its discretion at trial by admitting evidence of his prior bank robberies, (2) committed plain error at sentencing by calculating his criminal history

points based in part on certain juvenile convictions, and (3) erred at sentencing in assessing a five-level enhancement for possession of a firearm during the commission of the bank robbery. For the reasons stated below, we affirm in part, reverse in part, and remand the case to the district court for resentencing.

Jurisdiction was proper in the district court based upon 18 U.S.C. § 3231. Jurisdiction is proper in this court based upon 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). The notice of appeal was timely filed pursuant to Fed. R. Crim. P. 4(b).

**Background**

The following summary of the background is based upon the evidence presented at trial. Roberts and Carl F. Mitchell knew each other from childhood. In 1998, shortly after Roberts was released from prison for 1992 bank robberies, Roberts and Mitchell became reacquainted. Mitchell was having financial difficulties and suggested to Roberts that they rob a bank together. Roberts agreed. While planning the robbery, Roberts advised Mitchell to look for a bank close to a highway, not to use a gun during the robbery, and to be sure to demand the money in the bank teller's second drawer. After selecting as their target the Sterling National Bank in Kansas City, Missouri, the two men carried out their plan on May 4, 1999. They borrowed a friend's car, changed its license plates, and proceeded to the bank. It was agreed that Mitchell would get 60% and Roberts would get 40% of the proceeds. At the bank, Mitchell went inside while Roberts waited in the car. Mitchell did not take a gun into the bank.[1] Inside the bank, Mitchell approached one of the tellers, Mary Jo Prince. He ordered Prince to put all the money from her drawers into a bag. Mitchell stated that he had a gun, although he never displayed one and did not actually have one on his person. Prince put the

---

[1]Although Mitchell did not actually testify to this at trial, Roberts concedes that Mitchell, acting alone and out of Roberts' presence, placed a handgun in the glove box of the borrowed vehicle during the time the two men were preparing for the bank robbery and that the gun remained in the glove box while Mitchell robbed the bank. See Brief for Appellant at 6-7.

money from her first drawer in the bag. Mitchell told her not to forget the money in the second drawer, and she showed him that the second drawer was empty. After Mitchell left the bank, Prince alerted others that she had been robbed. A customer overheard Prince and followed Mitchell out the door. The customer observed Mitchell get into the car in which Roberts was waiting, and drive off with Roberts at the wheel. The customer was able to provide the police with a description of the car, and Roberts and Mitchell were soon spotted and pursued by the police. During the pursuit, Mitchell jumped out of the car and attempted to escape on foot, taking the bag of money with him. While fleeing, Mitchell discarded the money. Officers pursued him on foot, caught him, and arrested him. They recovered the bag of money and, next to it, a loaded semi-automatic pistol.[2] Within a short time, Roberts was also apprehended and placed under arrest.

On May 6, 1999, Roberts and Mitchell were indicted on one count of bank robbery. Mitchell entered into a plea agreement with the government and agreed to testify against Roberts. At Robert's trial, Mitchell testified on direct examination by the government that Roberts had committed bank robberies in 1992, for which he was incarcerated in 1993. Mitchell testified that, because Roberts had committed prior bank robberies, he relied on Roberts' advice in carrying out the bank robbery – for example, at Roberts' suggestion, he chose a bank close to a highway, he did not bring the gun into the bank, and he demanded the money in the bank teller's second drawer. Roberts timely objected to this evidence under Fed. R. Evid. 403 and 404(b). The district court overruled the objection.

The jury found Roberts guilty on the one count of bank robbery in the indictment. Roberts moved for judgment of acquittal or, in the alternative, a new trial on grounds that the evidence of his prior bank robberies and related convictions was

---

[2]Roberts also does not dispute the fact that Mitchell took the gun from the glove box just before he fled from the car. See id. at 9.

improperly admitted, and the otherwise admissible evidence was insufficient as a matter of law to sustain the jury verdict. The district court denied Roberts' motion. See id. (Sept. 28, 1999) (order denying defendant's motion for judgment of acquittal or, in the alternative, for a new trial) (hereinafter "slip op.").

The district court instructed the probation office to prepare a Presentence Investigation Report (PSIR). Upon receipt of the PSIR, both Roberts and the government objected in writing to the PSIR's recommendation that Roberts be given a five-level sentencing enhancement under U.S.S.G. § 2B3.1(b)(2)(C),[3] for possessing a firearm as part of the offense conduct. Notwithstanding the objections of both Roberts and the government, the district court imposed the five-level enhancement under § 2B3.1(b)(2)(C). The district court calculated Roberts' total offense level to be 27, with a criminal history category IV, for a sentencing range of 100 to 125 months. The district court sentenced Roberts to 112 months in prison, three years of supervised release, and a special assessment of $100. This appeal followed.

**Discussion**

*Admission of evidence of prior bank robberies*

Roberts first argues that the district court abused its discretion in admitting evidence of his prior bank robberies. In addressing the admissibility of Mitchell's

---

[3]Section 2B3.1(b)(2) of the Sentencing Guidelines provides:

(A) If a firearm was discharged, increase by **7** levels; (B) if a firearm was otherwise used, increase by **6** levels; (C) if a firearm was brandished or possessed, increase by **5** levels; (D) if a dangerous weapon was otherwise used, increase by **4** levels, (E) if a dangerous weapon was brandished or possessed, increase by **3** levels; (F) if a threat of death was made, increase by **2** levels.

testimony concerning Roberts' prior bank robberies and related convictions, the district court concluded that admission of the evidence did not violate Fed. R. Evid. 404(b) because the evidence was offered and admitted under the theory of res gestae. Slip op. at 4-6 ("The prior convictions thus became an intrinsic part of this crime, so integrated into the context of the offense, i.e., into the genesis and execution of the offense, that the prior bank robberies are an integral part of the crime.") (citing, e.g., Moore v. United States, 178 F.3d 994 (8th Cir.) (Moore), cert. denied, 528 U.S. 943 (1999)). The district court further opined that the prejudicial effect of the challenged evidence did not substantially outweigh its probative value and thus its admission did not violate Fed. R. Evid. 403. Id. at 6-7. The district court also reasoned that cautionary instructions were given, and they were sufficient to overcome any unfair prejudice that might have resulted from the admission of the challenged evidence. Id. at 7.

On appeal, Roberts argues that the district court abused its discretion in admitting Mitchell's testimony concerning the prior robberies and convictions because the prior robberies were not so intrinsically related to the present offense that proof of the charged offense necessarily proved the other prior offenses or proof of the prior offenses was necessary to explain the charged offense. He notes, for example, that the prior offenses occurred seven years earlier when he was only nineteen years old, that Mitchell was not involved in those robberies, that there is nothing unique about the prior offenses and the present offense that would establish a pattern or scheme, and that the prior offenses do not explain Roberts' and Mitchell's relationship because they have known each other since childhood. Furthermore, Roberts argues, unlike in Moore, the prior offenses at issue in the present case are not related to any element of the offense for which he was being tried. In Moore, Roberts explains, the defendant was charged with conspiracy to commit bank robbery, not just bank robbery, and an element of conspiracy is the existence of an agreement. Thus, Roberts continues, this court in Moore admitted a co-conspirator's testimony about the defendant's prior experience with bank robberies because that prior experience was an essential aspect of the agreement between the defendant and his co-conspirator. By contrast, Roberts

contends, there was no conspiracy count in the present case – only a bank robbery count requiring the government to prove that a bank robbery occurred, that he (Roberts) knew about it, and that he took some action in furtherance of it. Therefore, Roberts concludes, Mitchell's testimony about Roberts' prior bank robberies did not tend to prove any element of the charged offense, it was improperly admitted under the res gestae theory, and it should have been excluded under Fed. R. Evid. 403 and 404(b) as its purpose and effect was merely to suggest that Roberts had acted in conformity with his prior wrongful conduct.

While Roberts' position has been well-argued, we are not persuaded that the challenged evidentiary ruling is at odds with our earlier applications of this res gestae doctrine. See, e.g., Moore, 178 F.3d at 1000; United States v. Riebold, 135 F.3d 1226, 1229 (8th Cir.) (Riebold), cert. denied, 524 U.S. 944 (1998). Furthermore, our review of the district court's admission of the evidence related to Roberts' prior bank robberies is only for an abuse of discretion. See Moore, 178 F.3d at 1000; Riebold, 135 F.3d at 1229.

To begin, Moore does not say that the evidence challenged in that case, of the defendant's prior wrongful conduct, was admissible solely on the conspiracy count, to the exclusion of the bank robbery count. In Moore, 178 F.3d at 1000, this court stated in relevant part:

> Moore was charged and convicted of both conspiracy to commit an offense against the United States and attempted bank robbery. In our view, this evidence [of Moore's prior bank robberies] is probative of the former offense and admissible as evidence of the crime charged. . . . This testimony . . . supports the inference that [Moore] used his prior success to persuade Fisher to enter into the conspiracy. The agreement between Fisher and Moore is an essential element of the conspiracy charge, and evidence that explains the genesis of this agreement is relevant.

Similarly, in the present case, it is fair to say that Roberts' prior bank robberies, as referenced in Mitchell's testimony, helped to explain both the genesis and the execution of their bank robbery offense. As previously stated, Mitchell testified that Roberts advised Mitchell to look for a bank close to a highway, not to use a gun during the robbery, and to be sure to demand the money in the bank teller's second drawer. Mitchell followed each suggestion. Mitchell testified that he believed Roberts knew how to rob a bank because Roberts had done it before. See Trial Transcript at 82. Roberts' past bank robberies , therefore, arguably played an integral role in the instant offense, and the district court did not abuse its discretion in admitting the challenged testimony as res gestae, non-Rule 404(b), evidence. See Moore, 178 F.3d at 1000 ("Evidence that 'tends logically to prove any element of the crime charged, . . . is admissible as an integral part of the immediate context of the crime' and is not governed by [Rule] 404(b).") (quoting United States v. Bass, 794 F.2d 1305, 1312 (8th Cir.), cert. denied, 479 U.S. 869 (1986)); Riebold, 135 F.3d at 1228 (explaining res gestae theory and noting that "when evidence is admitted under res gestae, Rule 404(b) is not implicated"). We also disagree with Roberts' Rule 403 argument that the unfair prejudice resulting from the evidence substantially outweighed its probative value. As previously stated, this evidence was probative because it helped to explain the circumstances of the bank robbery and the nature of Roberts' and Mitchell's relationship vis-a-vis the crime. Moreover, the number of years separating Roberts' prior offenses and the offense charged does not, as Roberts suggests, significantly diminish the probativeness of the evidence because Roberts had been out of prison for only about a year when the instant offense occurred. In sum, we hold that the district court did not abuse its discretion in admitting the challenged evidence related to Roberts' prior bank robberies.

*Reliance at sentencing on juvenile convictions*

Roberts argues, and the government agrees, that the district court erroneously assigned him four criminal history points at sentencing based upon convictions which

occurred before his eighteenth birthday and more than five years before the commencement of the instant offense. The government agrees that, as a consequence of this mistake, Roberts was erroneously placed in criminal history category IV instead of III and his sentence was "above that provided under the guidelines." See Brief for Appellee at 17. The government further concedes that "this is an appropriate case in which to exercise discretion to remand for resentencing." Id. at 18. We hold that the inclusion of the four challenged criminal history points was plain error. See U.S.S.G. § 4A1.1, comment. (n.3) ("An adult or juvenile sentence imposed for an offense committed prior to the defendant's eighteenth birthday is counted only if imposed within five years of the defendant's commencement of the current offense."), § 4A1.2(d). Accordingly, we vacate Roberts' sentence and remand the case to the district court for resentencing without the erroneous criminal history points.

*Sentencing enhancement for possession of a firearm*

Roberts also asserts that the district court erred at sentencing in assessing a five-level enhancement pursuant to U.S.S.G. § 2B3.1(b)(2)(C) for the possession of a firearm during the commission of the offense. As noted above, § 2B3.1(b)(2)(C) of the Sentencing Guidelines provides: "if a firearm was brandished or possessed, increase by **5** levels." The PSIR recommended the five-level enhancement, and both defense counsel and the government objected.

The government, in its written objections to the PSIR, explained as follows:

> The government has no evidence that Mitchell took a weapon into Sterling National Bank when he committed the robbery. There is evidence (Mitchell's testimony) that he put a gun in the glove box of the car before he and Roberts drove to the bank for the robbery and that he

–8–

left it there when he went in to rob the bank;[4] there is evidence that Mitchell told the teller (Mary Jo Prince) he had a gun but she never saw one; and there is evidence that he discarded a weapon after he got out of the getaway vehicle and ran. However, there is no evidence that he took the gun into the bank or removed it from the glove box except to discard it when he ran from the police. Further, Mitchell states that Roberts told him not to take a gun into the bank, as it would increase his sentence if he were caught, and that Mitchell did not tell Roberts he had the gun in the car. Thus, no firearm was brandished or displayed, and the evidence of possession is at the time of Mitchell's arrest, not at the time of the offense.

Addendum to Brief for Appellant at 10 (government's letter objecting to the PSIR). The government further stated that, "[a]t most, a two-level increase under U.S.S.G. § 2B3.1(b)(2)(F) might apply." Id.[5] Finally, the government concluded that "[s]ince the issue has not been clearly addressed by the Eighth Circuit, the United States submits that there should be no enhancement under § 2B3.1(b)(2)." Id. at 11.

As stated above, the district court nevertheless agreed with the recommendation in the PSIR and assessed the five-level enhancement.

On appeal, Roberts challenges the district court's decision to hold him accountable, under U.S.S.G. § 1B1.3(a)(1)(B), for Mitchell's "possession" of the gun.

---

[4]As previously observed, see note 1 *supra*, Mitchell did not actually testify that he put the gun in the glove box. However, because that fact is contained in the Presentence Investigation Report and is not disputed by Roberts, we accept it as true. See United States v. Hammer, 3 F.3d 266, 271 (8th Cir. 1993) (a court may rely on facts in a presentence report for purposes of sentencing only if those facts in the presentence report are not disputed by the defendant), cert. denied, 510 U.S. 1139 (1994).

[5]As previously noted, U.S.S.G. § 2B3.1(b)(2)(F) provides: "if a threat of death was made, increase by **2** levels."

Section 1B1.3(a)(1)(B) provides that relevant conduct may include the reasonably foreseeable acts and omissions of others in furtherance of a jointly undertaken criminal activity. While Roberts implicitly concedes that he may be held accountable for the reasonably foreseeable acts of Mitchell in furtherance of the bank robbery, he challenges, as a legal matter, whether Mitchell "possessed" the gun during the offense, within the meaning of U.S.S.G. § 2B3.1(b)(2)(C). He argues that, because § 2B3.1(b)(2)(C) contains no definition of the term "possessed," its interpretation is a legal matter for this court's *de novo* consideration. He urges a narrow interpretation under the rule of lenity – one which would exclude from the meaning of the guideline Mitchell's possession of the gun during their attempted escape.[6] Alternatively, he argues, to the extent the district court may have found that Mitchell had actual or constructive possession of the gun while he was in the bank, that finding was a clearly erroneous finding of fact.

In a complete reversal of its earlier stated position, the government now argues in favor of the sentencing enhancement. The government emphasizes that, for sentencing purposes, Roberts is responsible for the reasonably foreseeable actions of Mitchell in furtherance of their jointly undertaken criminal activity. See U.S.S.G. § 1B1.3(a)(1)(B). The government further argues: "It is clear that the offense of bank robbery includes the escape phase of the robbery, the hot pursuit following the physical

---

[6]Roberts explains:

> While Mitchell may well have possessed the gun before and after the commission of the bank robbery, § 2B3.1(b)(2)(C) simply does not apply to these periods of time. The reasoning behind this enhancement relates to the increase in severity when a gun is involved due to the heightened potential for harm. This increased aspect of danger to others is obviously not present when a robber opts not to use a gun, thus the justification for an increased penalty evaporates.

Brief for Appellant at 34-35.

departure from the bank."  Brief for Appellee at 20-21 (citing, e.g., United States v. Jarboe, 513 F.2d 33, 36-37 (8th Cir.), cert. denied, 423 U.S. 849 (1975)).  The government concludes that, because Mitchell constructively possessed the gun during their attempted escape, and that possession of the gun was reasonably foreseeable to Roberts (despite his advice not to use a gun), the district court did not err in assessing the five-level enhancement.

The district court provided the following statement of reasons for imposing the increase under U.S.S.G. § 2B3.1(b)(2)(C):

> I believe that, given the fact that the defendant [Roberts] is responsible for the actions of his codefendant [Mitchell] and the fact Mr. Mitchell in the course of the bank robbery threatened he had a gun, that a gun was found with the money when the money was apprehended in close vicinity to Mr. Mitchell and Mr. Mitchell acknowledged that the gun was placed in . . . the get-away vehicle prior to robbing the bank is sufficient to warrant the five-level enhancement as reflected in the presentence report, and, therefore, the objections noted to that enhancement are denied.

See Sentencing Transcript at 177.

Upon review, we agree with the government's earlier stated position that Mitchell's threat to the bank teller that he had a gun at most supported a two-level enhancement under U.S.S.G. § 2B3.1(b)(2)(F).  We also agree with the government's current position that, for purposes of determining Roberts' relevant conduct under the sentencing guidelines, he is accountable, pursuant to U.S.S.G. § 1B1.3(a)(1)(B), for the reasonably foreseeable acts of Mitchell in furtherance of their jointly undertaken criminal activity, which may include conduct during their attempted escape.  However, the district court's reasoning is flawed because: (1) the district court relied upon Mitchell's threat to the bank teller to support the *five*-level increase under § 2B3.1(b)(2)(C), and (2) in determining that Mitchell "possessed" the gun during their attempted escape, for purposes of imputing that conduct to Roberts under

-11-

§ 1B1.3(a)(1)(B), the district court made no findings as to whether Mitchell's possession of the gun was in furtherance of the jointly undertaken criminal activity and reasonably foreseeable to Roberts, which we believe are critically important factual issues under the circumstances of this case. We therefore instruct the district court to reconsider the applicability of U.S.S.G. § 2B3.1(b)(2) on remand and, if any sentencing enhancement under that provision is imposed, to support it with a statement of findings and reasons that is consistent with this opinion.

## Conclusion

We affirm Roberts' conviction, vacate his sentence, and remand the case to the district court for resentencing consistent with this opinion.


A true copy.


Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.