UNITED STATES, Appellee,

v.

Carl JENNETTE, Defendant–Appellant.

Docket No. 01–1685.

United States Court of Appeals,
Second Circuit.

Argued: June 12, 2002.

Decided: July 9, 2002.

William B. Darrow, Assistant United States Attorney (Peter W. Hall, United States Attorney for the District of Vermont, on the brief), Burlington, VT, for Appellee.

Barbara E. O'Connor, Assistant Federal Public Defender (Alexander Bunin, Federal Public Defender, on the brief), Burlington, VT, for Defendant–Appellant.

Before: MINER, CABRANES, and POOLER, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge.

Carl Jennette appeals from the December 17, 2001 judgment of conviction and sentence entered in the United States Dis-

trict Court for the District of Vermont (William K. Sessions III, *Judge*) principally committing Jennette to imprisonment for 77 months pursuant to his plea of guilty to a violation of 18 U.S.C. § 2113(a) (robbery of a federally insured bank). Jennette claims on appeal that the District Court erred by increasing his offense level pursuant to Section 2B3.1(b)(2)(F) of the United States Sentencing Guidelines ("U.S.S.G."), which provides a two-level increase to a defendant's offense level for making a "threat of death" during the commission of a robbery, based upon Jennette's statement to the bank teller, "I have a gun."

On October 16, 2000, Jennette entered Howard Bank in Montpelier, Vermont. He approached a teller and demanded all the money in her drawer. When she did not promptly comply and another teller began to approach them, he announced, "I have a gun." The teller then gave Jennette approximately five thousand dollars from her drawer and Jennette left the bank. He was apprehended less than half an hour later. Jennette, who was not, in fact, armed at the time of the robbery, entered a plea of guilty on September 20, 2001.

The District Court, following the recommendations in the Presentencing Report (PSR) of the United States Probation Office, applied the robbery guideline, § 2B3.1, to obtain a base offense level of 20.[1] The Court then imposed a two-level increase because property of a financial institution was taken and imposed another two-level increase under § 2B3.1(b)(2)(F),[2] for engaging in conduct during the commission of the offense "that would instill in

a reasonable person, who is a victim of the offense, a fear of death." U.S.S.G. § 2B3.1, cmt. n. 6. The District Court also adjusted Jennette's offense level downward by three levels for acceptance of responsibility, for a final offense level of 21. With an offense level of 21 and a criminal history category of VI, Jennette faced a penalty range of 77–96 months of imprisonment. The District Court sentenced Jennette principally to a term of 77 months of imprisonment.

■ "We review *de novo* a district court's legal interpretation and application of the Sentencing Guidelines.... We review factual findings underlying the district court's application of the Sentencing Guidelines for clear error, giving due deference to the district court's application of the [G]uidelines to the facts." *United States v. Carpenter*, 252 F.3d 230, 234 (2d Cir.2001) (internal quotation marks omitted).

Application Note 6 to § 2B3.1(b)(2)(F) elaborates on the conduct or statements that may constitute a "threat of death" under § 2B3.1:

[T]he defendant does not have to state expressly his intent to kill the victim in order for the enhancement to apply. For example, an oral or written demand using words such as ... "Give me the money or I will shoot you" ... would constitute a threat of death.

The application note also instructs the court to "consider that the intent of this provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a

---

1. The Guideline states, in pertinent part:
    If the property of a financial institution or post office was taken, or if the taking of such property was an object of the offense, increase by 2 levels.
    U.S.S.G. § 2B3.1(b)(1).

2. The subsection states in full: "[I]f a threat of death was made, increase by 2 levels." U.S.S.G. § 2B3.1(b)(2)(F) (emphasis in original).

reasonable person, who is a victim of the offense, a fear of death." *Id.*

■ Taken together, Jennette's statements to the teller—to give him the money and that he had a gun—are equivalent to the Guideline's model statement "Give me the money or I will shoot you." The only difference between the two statements is that Jennette's statements required the teller to draw a single inference—that is, that Jennette was willing to use the gun that he claimed to have, if the teller did not comply with Jennette's demand. This is a very small inferential step for a teller to make, particularly during the confusion and understandable anxiety of a robbery. Accordingly, we conclude that a reasonable teller, when faced with a bank robber who demands money and states that he has a gun, normally and reasonably would fear that his or her life is in danger.

Jennette implies that applying the enhancement to the statement "I have a gun" would automatically increase the bank robbery base offense level because then any statements or conduct sufficient to accomplish a bank robbery could be construed as a "threat of death." This argument is consistent with our decision in *United States v. Coe*, 891 F.2d 405, 411 (1989), where we vacated a sentence in which the district court departed upward from the otherwise applicable offense level based in part on the defendant's statement, "I have a gun." Noting the Sentencing Commission's careful calibration of offense levels to different uses of a firearm in the commission of an offense, but its failure to specify that claiming to be armed qualified for an increased offense level, we concluded that the Sentencing Commission had declined to apply an increased offense level (whether under the section providing an increase for the making of an express

threat of death or any other provision) based upon a mere claim to be armed with a gun, "apparently" considering it "an unexceptional means of satisfying the intimidation element of the crime." [3] *Id.*

Since *Coe*, however, the pertinent guideline has been amended to remove the requirement that a threat be "express." *See* U.S.S.G.App. C, amend. 552 (1997). The Sentencing Commission, instead of asking courts to divine, as we attempted to do in *Coe*, what conduct is sufficiently distinct from the basic intimidation element of the offense to trigger the increase, substituted a test already used by a majority of circuits: whether the defendant's conduct would cause an objectively reasonable person in "the position of the immediate victim" to fear death. *Id. See also United States v. Arevalo*, 242 F.3d 925, 927 (10th Cir.2001) (describing the majority circuit view prior to amendment). Because it is not strictly necessary for a bank robber to cause the victim to fear death in order to accomplish a bank robbery, the increase provided by the amended guideline for conduct that would cause a person in the position of the immediate victim to fear death is not coterminous with the basic offense conduct.

Although we have not considered the application of § 2B3.1(b)(2)(F) since its amendment, every circuit thus far to consider under the amended guideline a statement similar to Jennette's bare utterance "I have a gun" has held that it qualifies for the "threat of death" enhancement. *See United States v. Day*, 272 F.3d 216, 217–18 (3d Cir.2001) (holding the statements, "Put some money on the counter. No dye packs. I have a gun," without further threatening conduct or statements, were sufficient to support the application of the § 2B3.1(b)(2)(F) increase to the offense

---

**3.** The offense of bank robbery itself requires that the defendant use either "force and vio-lence" or "intimidation." 18 U.S.C. § 2113(a).

level); *United States v. Carbaugh,* 141 F.3d 791, 794 (7th Cir.1998) (holding that defendant's statement "I have a gun" constituted a threat of death under the amended U.S.S.G. § 2B3.1(b)(2)(F)); *United States v. Gibson,* 155 F.3d 844, 845 (7th Cir.1998) (holding that the statement "I have a gun" qualifies for the threat of death increase "unless mitigating circumstances deprive the words of their plain meaning."); *see also Arevalo,* 242 F.3d at 928 (holding that the bank robber's statement to the teller that he has a gun and is "willing to use it" is sufficient to trigger a reasonable fear of being shot and to qualify for the § 2B3.1(b)(2)(F) increase); *United States v. Gray,* 177 F.3d 86, 88 (1st Cir.1999) (holding that the statement "I got a gun. Give me the money and [no] one will get hurt" qualifies for the § 2B3.1(b)(2)(F) increase); *United States v. Franks,* 183 F.3d 335, 336 (4th Cir.1999) (holding the same for the statement, "I have a gun. I have nothing to lose.").

Jennette also suggests that the District Court erred in increasing his offense level in light of Jennette's documented history of mental retardation and mental illness, and Jennette's contention that he heard voices instructing him to rob the bank. However, a history of mental retardation and mental illness, while potentially relevant to a departure based on diminished capacity, has not been shown in this case to be relevant to the determination under § 2B3.1(b)(2)(F) of whether a reasonable person in the position of the immediate victim would experience a fear of death based on the defendant's conduct.[4] In order to be relevant to the objective determination of whether the defendant's conduct would put a reasonable victim in

fear of death, the defendant's mental illness or retardation would have to be apparent to a reasonable victim and affect his or her assessment of the threat that the defendant posed.

The District Court thus was correct in holding that a bank robber's statement "I have a gun" to a bank teller during a bank robbery can constitute a "threat of death," as that term is used in § 2B3.1(b)(2)(F). Moreover, we see no error, much less clear error, in the District Court's conclusion that, under the specific facts and circumstances of Jennette's bank robbery, Jennette's statements to the teller "would instill in a reasonable person, who is a victim of the offense, a fear of death." U.S.S.G. § 2B3.1, cmt. n. 6.

Having reviewed all of the Defendant's arguments on this appeal and finding them to be without merit, we **AFFIRM** the judgment of the District Court.

---

4. Jennette made the District Court aware of his psychiatric history and mental retardation in his Sentencing Memorandum and Motion for Downward Departure. The District Court's denial of the motion for a downward departure is not appealable because Jennette

has not shown, or even argued, that the District Court committed an error of law or misapprehended its power to depart. *United States v. Acevedo,* 229 F.3d 350, 356 (2d Cir.), *cert. denied,* 531 U.S. 1027, 121 S.Ct. 602, 148 L.Ed.2d 514 (2000).