**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellant,*

          v.

DAVID FRANK JENNINGS, a/k/a Mike
Frank Stout,
          *Defendant-Appellee.*

No. 04-10343

D.C. No.
CR-03-00376-PMP

OPINION

Appeal from the United States District Court
for the District of Nevada
Philip M. Pro, District Judge, Presiding

Argued and Submitted
September 13, 2005—San Francisco, California

Filed March 2, 2006

Before: Betty B. Fletcher, John R. Gibson,* and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Berzon;
Concurrence by Judge Gibson

---

*The Honorable John R. Gibson, Senior United States Circuit Judge for
the Eighth Circuit, sitting by designation.

## COUNSEL

Daniel G. Bogden, United States Attorney, Camille W. Damm, Assistant United States Attorney, and J. Gregory Damm, Assistant United States Attorney, Las Vegas, Nevada, for the plaintiff-appellant.

Franny A. Forsman, Federal Public Defender, and Jason Carr, Assistant Federal Public Defender, Las Vegas, Nevada, for the defendant-appellee.

## OPINION

BERZON, Circuit Judge:

This appeal presents the question left open by this court in *United States v. France*, 57 F.3d 865 (9th Cir. 1995): Whether a defendant who, in the course of a bank robbery, states that he has a gun but makes no reference to his willingness to use it is subject to a two-level sentencing enhancement for a "threat of death" pursuant to United States Sentencing Guidelines (U.S.S.G. or Guidelines) § 2B3.1(b)(2)(F).[1] Although we

---

[1]Unless otherwise indicated, all citations in this opinion are to the 2003 edition of the Guidelines.

decline to impose a per se rule in answer to this question, we hold that under most circumstances, a bank robber's statement that he has a gun is sufficient to instill a fear of death in a reasonable victim and therefore warrants the threat-of-death enhancement.

## I.

On the afternoon of August 14, 2003, the defendant, David Frank Jennings, entered a Bank of America branch in Las Vegas, Nevada, approached a teller and demanded money, stating: "Put all your money on top of the counter. I have a gun. Just do it now." The teller summoned the bank manager, who approached the teller window. Jennings then told the manager: "Sir, tell her to put the money on the counter, hurry up." Jennings fled on foot with just over one thousand dollars in cash. He was apprehended shortly thereafter and arrested.

Jennings was indicted for bank robbery in violation of 18 U.S.C. § 2113(a). After he pleaded guilty, the Department of Probation prepared an initial presentence report (PSR), recommending a two-level enhancement for robbery of a financial institution and a three-level downward adjustment for acceptance of responsibility. The government filed an objection to the initial PSR arguing for the imposition of a two-level enhancement pursuant to U.S.S.G. § 2B3.1(b)(2)(F), which provides: "if a threat of death was made, increase by **2** levels." After considering the government's objection, the Department of Probation agreed that the enhancement was warranted and amended the PSR to reflect the application of the two-level increase, resulting in a sentencing range of 70-87 months.

At Jennings's sentencing hearing the district court entertained argument on the threat-of-death enhancement. Both Jennings and his attorney stated that there were no factual errors in the revised PSR.[2] After an extensive colloquy, the

---

[2]In the proceedings before the district court, defense counsel initially refused to concede that Jennings had made the statement in question, spe-

district court sustained the defendant's objection to the two-level sentence enhancement, holding that, taken in context, Jennings's statement did not warrant the adjustment. Noting that neither the commentary to the Guidelines nor the Ninth Circuit's opinion in *France* states that simply asserting that one has a gun is sufficient to constitute a threat of death, the court concluded that Jennings's statement "alone without more is simply not sufficient" to justify the enhancement. In addition, the district court foreshadowed this appeal by noting: "I think the Ninth Circuit is entitled to revisit this issue. I hope they will. I hope this case will be employed to revisit it. I think it would be an excellent crystal-clear case to do that."

After the two-level enhancement was stricken, the applicable Guidelines range was 57-71 months. Consistent with the Department of Probation's revised mid-range recommendation, the district court sentenced Jennings to a prison term of 63 months. The government timely appealed.

## II.

Jennings suggests that we should decline to decide the government's appeal of the district court's interpretation of the Guidelines because of the intervening decision in *United States v. Booker*, 125 S. Ct. 738 (2005). After *Booker*, district courts must consider but need not follow the formerly mandatory aspects of the Guidelines. *Id.* at 764-65. In the post-*Booker* world of advisory Guidelines, after this court has clar-

---

cifically noting in the defendant's Objections to the Presentence Report that the argument in opposition to the enhancement proceeded on the *assumption* that the statement was, in fact, made. During oral argument on appeal, however, defense counsel conceded that when Jennings and his attorney agreed that the PSR contained no factual errors, they were conceding that Jennings had in fact told the teller that he had a gun. Accordingly, we proceed on the understanding that Jennings made the statement alleged.

ified the interpretation of the Guidelines a district court could impose the same sentence on remand. Still, because district courts must, after *Booker*, consult the Guidelines for advice in fashioning appropriate sentences and must do so accurately, we continue to address challenges to pre-*Booker* district court interpretations of the Guidelines. *See United States v. Kimbrew*, 406 F.3d 1149, 1152 (9th Cir. 2005); *see also United States v. Cantrell*, ___ F.3d ___, No. 03-30562, 2006 WL 73483, at *5 (9th Cir. Jan. 13, 2006); *United States v. Moreno-Hernandez*, 419 F.3d 906, 916 n.10 (9th Cir. 2005). Jennings's broad objection to the continued vitality of this appeal is therefore not well taken.[3]

Although a defendant's overall sentence under the Guidelines is reviewed for reasonableness, *see Booker*, 125 S. Ct. at 765-66, within the reasonableness inquiry "[t]he district court's interpretation of the Sentencing Guidelines is a question of law which is subject to *de novo* review, while factual determinations made in the course of applying the guidelines are reviewed for clear error." *See United States v. Lindholm*, 24 F.3d 1078, 1085 (9th Cir. 1994).

---

[3]*Kimbrew* did not consider the question whether the now-advisory nature of the Guidelines has rendered the precise computation of a Guideline range unnecessary in a certain range of cases that require complicated factual determinations, such as the amount of monetary loss. There may be little point in requiring district courts to engage in the purely academic exercise of resolving complicated factual questions in order to delineate an exact Guidelines range if the court has already settled on a reasonable sentence in light of the factors set forth in 18 U.S.C. § 3553(a). Although the Second Circuit has determined that, in such cases, a precise calculation is not always necessary, *see United States v. Crosby*, 397 F.3d 103, 112 (2d Cir. 2005), the Ninth Circuit has not yet reached this issue. *See Cantrell*, 2006 WL 73483, at *6 n.3 (noting but not deciding same issue). Given that the threat-of-death enhancement ordinarily does not present a difficult factual issue — and that here, the defendant has conceded that the statement at issue was in fact made — this case is not a proper vehicle to consider the question. Accordingly, as we did in *Cantrell*, we leave that question for another day.

As a preliminary matter, to determine the proper standard of review we must establish the correct characterization of the district court's decision on the applicability of the threat-of-death enhancement. Jennings's argument that the district court was making a factual determination, reviewable only for clear error, reflects the district court's statement that the question whether to impose the enhancement was a "very factually-specific assessment that has to be made looking at the facts and the words that are used, the gestures that are used, [and] the circumstances" and that the statement needed to be evaluated "in the context in which it was made." In contrast to these statements, however, is the district court's remark that the government should appeal its decision to this court to resolve a generic issue, indicating that the court was rendering a legal determination as to whether a statement such as the one made by Jennings could *ever* qualify as a threat of death. In addition, despite the district court's reference to context and the circumstances surrounding the robbery, at no time during the colloquy did the district court explain what, if any, circumstances it relied upon to conclude that Jennings did not make a threat of death. We therefore view the district court's decision that Jennings's proclamation to the bank teller "alone without more is simply not sufficient" as making a legal determination that the bald statement "I have a gun" is legally insufficient, standing alone, to amount to a threat of death.

[1] In further support of his contention that our review in this case should be for clear error, Jennings relies on a single statement from our prior decision in *France*, where we considered § 2B3.1(b)(2)(F) and concluded that the district court's finding that the enhancement applied was not "clearly erroneous when considered in the context of a bank robbery." *France*, 57 F.3d at 868. Three sentences after that statement, however, we clarified that our holding affirming the district court was premised on the dual conclusions that "the district court properly interpreted and applied U.S.S.G. § 2B3.1(b)(2)(F)" *and* that "[t]he district court's factual findings were not clearly erroneous." *Id*. Thus, our decision in

*France* is best understood as recognizing that the decision to impose such an enhancement involves both a legal conclusion — whether the statement at issue could ever, as a matter of law, constitute a threat of death — and a factual determination — whether, under the specific circumstances present, the statement was in fact a threat of death. We therefore take this opportunity to clarify what was implicit in *France*, and hold that whether a bank robber's statement *can* constitute an express threat of death is a legal interpretation of the Guidelines, which is reviewed de novo, but whether the statement itself, taken in context, amounts to a threat of death under the circumstances is a factual determination, which is reviewed for clear error.[4]

**[2]** Accordingly, we review de novo the district court's conclusion that the lone statement "I have a gun" is, as a matter of law, insufficient to warrant a threat-of-death enhancement. It is to that question that we now turn.

---

[4]The Seventh Circuit has concluded, as do we, that the application of the threat-of-death enhancement actually involves two separate determinations, one legal and the other factual. *See United States v. Gibson*, 155 F.3d 844, 846 (7th Cir. 1998) (holding that "[w]hether a robber's statement can constitute an express threat of death involves the legal interpretation of a sentencing guideline" which is reviewed de novo but "[w]hether the statement amounts to a threat of death under the circumstances is a factual question" to be reviewed for clear error); *see also United States v. Gray*, 177 F.3d 86, 91-92 (1st Cir. 1999) (applying de novo review to "the trial court's interpretation of the guidelines or its final determination to see whether the facts here supported a finding that [the defendant] made a threat of death" but applying clear error review as to any "factual disputes"). Both the Fifth and Sixth Circuits, in contrast, have held that the applicability of the threat-of-death enhancement is a legal determination. *See United States v. Soto-Martinez*, 317 F.3d 477, 478-79 (5th Cir. 2003) (holding that when the facts of a robbery are undisputed, the imposition of the enhancement is a question of the application of the Guidelines, to be reviewed de novo); *United States v. Winbush*, 296 F.3d 442, 443 (6th Cir. 2002) ("Whether these facts warrant a sentence enhancement pursuant to § 2B3.1(b)(2)(F) is a legal conclusion subject to de novo review.").

## III.

**[3]** The Guidelines provision at issue in this case, U.S.S.G. § 2B3.1(b)(2)(F), imposes a two-level increase to a defendant's base offense level when a "threat of death" was made during the commission of a criminal offense. The commentary applicable to this enhancement reads:

> "A threat of death," as used in subsection (b)(2)(F), may be in the form of an oral or written statement, act, gesture, or combination thereof. Accordingly, the defendant does not have to state expressly his intent to kill the victim in order for the enhancement to apply . . . . The court should consider that the intent of this provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, a fear of death.

U.S.S.G. § 2B3.1 cmt. n.6. As further elaboration, the commentary lists several examples of statements that would warrant the threat-of-death enhancement, including:

> "Give me the money or I will kill you", "Give me the money or I will pull the pin on the grenade I have in my pocket", "Give me the money or I will shoot you", "Give me the money or else (where the defendant draws his hand across his throat in a slashing motion)", or "Give me the money or you are dead."

*Id.* Absent from the list of examples provided in the commentary to § 2B3.1 is a statement, like the one made by Jennings, in which a bank robber claims to have a weapon but does not in any manner threaten to *use* the weapon, or any force at all, in the course of the robbery.

We begin our analysis with our prior decision in *France*, in which we considered the applicability of the threat-of-death

enhancement contained in § 2B3.1(b)(2)(F). In *France*, the bank-robbery defendant passed the teller a note which stated "Give me all the 100s and 50s in your drawer. I have dynamite." *France*, 57 F.3d at 865. Under the then-existing version § 2B3.1(b)(2)(F), a defendant was subject to a two-level enhancement for an "express threat of death," defined by the commentary as a statement "that would instill in a reasonable person, who is the victim of the offense, significantly greater fear than that necessary to constitute an element of the offense of robbery." U.S.S.G. § 2B3.1(b)(2)(F) (1995); *id.* § 2B3.1 cmt. n.6.

[4] *France* held that when considering the applicability of the threat-of-death enhancement, courts are to conduct an objective inquiry into the effect the defendant's words and actions would have on a reasonable victim. *France*, 57 F.3d at 866. We concluded that a reasonable teller reading the demand note at issue "would experience significantly greater fear than the level of intimidation necessary to constitute an element of the offense of robbery." *Id.* at 866-67. The reference to "I have dynamite," we determined, was akin to the commentary's grenade example even though France did not specifically threaten to use the dynamite to blow up the teller or the bank. *Id.* at 867.

In the course of our analysis in *France*, we noted disagreement with the Eleventh Circuit, which had concluded that phrases such as "I have a gun" and "I have a gun and nothing to lose" were insufficiently "direct, distinct, or express" to constitute "express threat[s] of death." *Id.* (quoting *United States v. Tuck*, 964 F.2d 1079, 1081 (11th Cir. 1992)). The Eleventh Circuit's view, we stated in *France*, was "unnecessarily cramped" because it would require a bank robber to use "magic words," such as "I will use the dynamite if you don't give me the money." *Id.* at 868. Nonetheless, we concluded the *France* opinion by declining to answer the question directly presented by this case: "Finally, we need not decide in this case whether § 2B3.1(b)(2)(F) would apply to a defen-

dant who announced during a robbery that he had a gun. In this case France claimed to have dynamite, which could blow up the entire bank, not just the people in the immediate vicinity." *Id*. The government now asks that we reach the question left unanswered by *France*.

**[5]** Before embarking on that inquiry, we respond to Jennings's argument that we are no longer bound by our holding and reasoning in *France* because of an intervening change in the language of the Guidelines provision at issue. After *France* was decided, the United States Sentencing Commission amended the text of § 2B3.1 in two significant respects. While the prior language mandated the two-level enhancement for an "express threat of death," the amended guideline softened this standard by removing the requirement that threats be "express." *Compare* U.S.S.G. § 2B3.1(b)(2)(F) (2003) *with* U.S.S.G. § 2B3.1(b)(2)(F) (1995). In addition, the Sentencing Commission amended the commentary to change the requirement that a threat instill "significantly greater fear than that necessary to constitute an element of the offense of robbery" to a requirement that the threat instill "a fear of death." *See* U.S.S.G. app. C, amend. 552 (2005). According to the Guidelines Manual, the text was amended to address the circuit conflict discussed in *France*. *See id*. The Sentencing Commission adopted the majority view, which applied the enhancement "when the combination of the defendant's actions and words would instill in a reasonable person in the position of the immediate victim (*e.g*., a bank teller) a greater amount of fear than necessary to commit the robbery." *Id*. (citing *United States v. Robinson*, 86 F.3d 1197, 1202 (D.C. Cir. 1996) and *United States v. Murray*, 65 F.3d 1161, 1167 (4th Cir. 1995)). Thus, the amendment of § 2B3.1 was designed to *endorse* the general, objective approach taken by the Ninth Circuit in *France* and to *reject* the "cramped" requirement of "direct" threats advanced by the Eleventh Circuit. *See United States v. Day*, 272 F.3d 216, 220 (3d Cir. 2001).**⁵**

---

**⁵**Tellingly, after the 1997 amendments the Eleventh Circuit recognized that its prior view was no longer correct and concluded that the statement "I have a gun" is sufficient to constitute a threat of death. *See United States v. Murphy*, 306 F.3d 1087, 1089-90 (11th Cir. 2002).

Accordingly, contrary to Jennings's claim, the holding and reasoning in *France* remains authoritative.

Jennings is correct, of course, that the phrase "fear of death" suggests a different inquiry than the phrase "significantly greater fear than that necessary to constitute an element of the offense of robbery." In neither *France* nor in this case, however, was there any doubt that *if* there was an actual threat, it was a threat of death, not of some lesser injury.

Although the Ninth Circuit has not considered the application of § 2B3.1 since the 1997 amendments, every other circuit to consider the issue of whether "I have a gun" constitutes a threat of death under the current version of the Guidelines has answered that question in the affirmative. *See United States v. Jennette*, 295 F.3d 290, 292 (2d Cir. 2002) (holding that the statement "I have a gun" is a threat of death because a reasonable teller, upon hearing the statement, "normally and reasonably would fear that his or her life is in danger"); *Day*, 272 F.3d at 218 (holding that "I have a gun" is a threat of death under the "broad[er]" amended enhancement); *United States v. Franks*, 183 F.3d 335, 338 (4th Cir. 1999) (holding that a note stating "I have a gun. I have nothing to lose" warrants the threat-of-death enhancement because a reasonable teller would have been in fear for her life); *United States v. Soto-Martinez*, 317 F.3d 477, 479 (5th Cir. 2003) (holding that "I have a gun" is sufficient to justify the sentencing enhancement because it merely requires a teller to make the reasonable inference that a robber would use the gun he claimed to have if he did not receive the money he demanded); *United States v. Winbush*, 296 F.3d 442, 443 (6th Cir. 2002) (holding that "I have a gun" merits an enhancement because a reasonable teller would believe that failure to comply "would result in being fatally shot"); *United States v. Gibson*, 155 F.3d 844, 846-47 (7th Cir. 1998) (holding that the statement "I have a gun" absent mitigating circumstances would lead an ordinary teller to fear being shot); *United States v. Roberts*, 253 F.3d 1131, 1137 (8th Cir. 2001) (noting in

dicta that a defendant's statement that he had a gun would be sufficient to warrant two-level enhancement); *United States v. Arevalo*, 242 F.3d 925, 928 (10th Cir. 2001) (holding that the statement "I have a gun" would cause a reasonable teller to fear being shot and that the phrase "[I] am willing to use it" would make a fear of death even more likely); *United States v. Murphy*, 306 F.3d 1087, 1089 (11th Cir. 2002) (holding that a demand note that read "You have ten seconds to hand me all the money in your top drawer. I have a gun" warranted the two-level enhancement because a reasonable teller would interpret the statement to mean: "If I do not give this robber money within ten seconds, I will be shot; and people who are shot often die.").

**[6]** Guided by the text and commentary of § 2B3.1, our prior decision in *France*, and the reasoning of the nine other circuit courts to consider the issue, we have no difficulty in concluding that a bank robber's plain statement that he has a gun can justify a threat-of-death enhancement.

**[7]** Both the commentary of § 2B3.1 as well as the language of *France* require the courts to apply an objective approach to determine whether a given statement qualifies as a threat of death. U.S.S.G. § 2B3.1 cmt. n.6; *France*, 57 F.3d at 866. The emphasis, then, is on how a reasonable teller, as the victim of the robbery, would view the statement. Both a bank robber's intent in making the statement and the likelihood that he actually would have used deadly force are both irrelevant. *See Murphy*, 306 F.3d at 1089 n.1 ("We do not understand the robber's intent to be determinative . . . . A threatened shooting might have a different effect on the shooter than on the potential target: The shooter might intend at most to harm, but the target might reasonably fear that the shot would be fatal."); *United States v. Gray*, 177 F.3d 86, 92 (1st Cir. 1999) (finding "no meaningful difference" in the fact that the robber was not actually carrying a gun during the course of the robbery because the teller "could not have discerned that from all the outward signs").

In addition, because the objective approach is based on the likely reaction of a *reasonable* teller, an examination into the subjective reaction of one specific teller is also inappropriate. The commentary to § 2B3.1 states that the enhancement should apply when a statement would "instill in a reasonable person, who is a victim of the offense, a fear of death." U.S.S.G. § 2B3.1 cmt. n.6. Any other approach would create a windfall for defendants who fortuitously selected to victimize a bank teller with an unusually thick skin.

**[8]** At the same time, the objective approach requires that courts take into account the overall context in which a statement is made. Thus, as the Seventh Circuit has noted, a robber's statement that he has a gun will not *always* amount to a threat of death, given the inquiry's "sensitivity to fact and context." *Gibson*, 155 F.3d at 847. Rather, "[i]t is conceivable that unusual mitigating circumstances accompanying [the] statement could deprive the words of their ordinary and expected meaning." *Id.* (internal quotation marks omitted).

We therefore hold that in most, but not all, circumstances, statements such as "I have a gun" are sufficient to instill a fear of death in a reasonable victim and warrant the § 2B3.1(b)(2)(F) enhancement. We agree with the Seventh Circuit, however, that there could be circumstances that would sufficiently dilute the phrase "I have a gun" so that it would not qualify as a death threat. An example would be a situation in which a bank robber claimed to have a gun but brandished what was quite obviously a toy. Thus, it is the objective, reasonable teller standard adopted in *France* that ultimately governs in light of all the circumstances, not any per se rule.

In this respect, we deviate from the reasoning of the district court, which made the converse determination, concluding that the "statement alone without more is simply not sufficient." In the context of a bank robbery, a reasonable teller would assume that "I have a gun" was a threat, not an effort

on the part of the bank robber to propose the sale of a firearm or to open debate on the historical underpinnings of the Second Amendment. *See United States v. Figueroa*, 105 F.3d 874, 879 (3d Cir. 1997) (asking "what is the purpose of announcing the presence of a weapon other than to convey to the victim that the weapon will be used unless the victim complies with the robber's demands?"). Moreover, it is not unreasonable for a teller to perceive such a threat to be deadly, as "[g]uns are widely known to be capable of producing death." *Murphy*, 306 F.3d at 1089 n.1.

The distinction between dynamite and firearms mentioned in *France* does not detract from this conclusion. As noted, *France* observed that dynamite has the potential to destroy the entire bank, not just individuals in the vicinity. *France*, 57 F.3d at 868. Although true, this consideration does not demonstrate that the statement "I have a gun" does not also constitute a threat of death. Guns are equally capable of causing death. As the government noted in the proceedings before the district court, incendiary devices, unlike guns, often have a lag time, which would allow a victim time to flee or seek cover. Furthermore, while the damage caused by a bomb can be more massive and widespread, a robber can more easily focus a pistol on one victim to ensure serious injury or death.[6] In short, no significant difference exists between a bomb and a gun to justify limiting applicability of § 2B3.1(b)(2)(F) to the former but not the latter.

Jennings's strongest argument to the contrary is that the mere statement that one is armed with a firearm should not be

---

[6]True, the greater control an individual has over a firearm would allow a robber to direct the shot at the floor or the teller's foot, thereby decreasing the chances for death. Because the intent of the bank robber is not relevant, however, this argument would necessitate a situation in which a reasonable teller would conclude that the robber would *not* shoot to kill. In the high-pressure context of a bank robbery, a reasonable teller is unlikely to draw that inference, absent some unusual contextual circumstance.

interpreted as rising to the level of a threat of death because "[t]here must be some line of demarcation" between conduct sufficient to satisfy a conviction for bank robbery and conduct that would warrant the threat-of-death enhancement. The assertion is that reading § 2B3.1(b)(2)(F) to encompass the statement "I have a gun" would cause the enhancement to be applied to "every conceivable circumstance" covered by § 2113(a), thereby making it part of the base offense level. This argument is unavailing for a number of reasons.

First, it fails to account for the fact that § 2B3.1(b)(2)(F) applies to various robbery, extortion, and blackmail offenses and not simply the bank-robbery offense for which Jennings was indicted. *See* U.S.S.G. § 2B3.1. Even if Jennings's offense conduct was determined to be coterminous with the enhancement, it does not necessarily follow that the threat-of-death enhancement would be grafted onto all crimes covered by § 2B3.1.

Furthermore, a reading of the statute under which Jennings was indicted and convicted reveals that the threat-of-death enhancement would not be applied in "every conceivable circumstance" under the statute. 18 U.S.C. § 2113(a) covers not only individuals who take property from a bank "by force and violence, or by intimidation," as did Jennings, but also those who obtain property from a bank by extortion and those who enter a bank with the intent to commit a felony therein.[7] *See* 18 U.S.C. § 2113(a).

---

[7]The full text of 18 U.S.C. 2113(a) reads as follows:

Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or

Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole

Jennings's contention also does not recognize the fact that one can commit a robbery with force or intimidation without threatening lives. *See Jennette*, 295 F.3d at 292 (holding that because it is not strictly necessary under the statute for a victim to fear death, the guideline enhancement is not coterminous with the basic offense conduct); *United States v. Bingham*, 628 F.2d 548, 549 (9th Cir. 1980) (holding that bank robbery by intimidation can be committed without "express threats of bodily harm, threatening body motions, or the physical possibility of concealed weapon[s]"). It takes no stretch of the imagination to proffer examples of statements by bank robbers that would not justify the two-level enhancement. As the Seventh Circuit observed, a demand note that stated "give me the money and keep your mouth shut" would be insufficient to warrant the enhancement. *United States v. Jones*, 83 F.3d 927, 929 (7th Cir. 1996). Likewise, a bank robber could threaten to hit a bank teller with his fist, or to tie him up and lock him in a room. While either threat would certainly suffice for robbery by intimidation, it would be unlikely for a reasonable teller to fear death under those circumstances.

Finally, Jennings's argument fails to account for the fact that the other sentencing enhancement he received, for taking the property of a financial institution pursuant to U.S.S.G. § 2B3.1(b)(1), *would* always be applicable to *bank-robbery* offenses under 18 U.S.C. § 2113(a). He offers no reason why the threat-of-death enhancement must offer a "line of demarcation" when the financial institution enhancement clearly does not.

---

or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny —

Shall be fined under this title or imprisoned not more than twenty years, or both.

**[9]** In conclusion, while we decline to adopt a per se rule that "I have a gun" will always constitute a threat of death under § 2B3.1(b)(2)(F), we hold that, under ordinary circumstances, such a statement made by a bank robber would instill a fear of death in a reasonable teller and therefore would justify the imposition of the two-level sentencing enhancement. Absent any circumstances that would "deprive the words of their ordinary and expected meaning," *see Gibson*, 155 F.3d at 847, "I have a gun" qualifies as a threat of death.

## IV.

In sum, a bank robber's statement that he has a gun is usually, but not always, sufficient to trigger the threat-of-death enhancement. We stress that the test is whether the statement is sufficient to instill a fear of death in a *reasonable* victim, not the reaction of the particular teller — such as the decision of the teller here to call her manager. Also, the defendant's *exact* words — for example, that Jennings added "Just do it now" after "I have a gun," implying urgency — may be pertinent in determining whether a reasonable teller would fear death.

**[10]** In light of the conclusion that "I have a gun" *can* qualify as a threat of death, we remand this case to the district court to reconsider the applicability of the enhancement, taking into account all the pertinent circumstances, and to resentence Jennings.[8]

**REVERSED AND REMANDED.**

---

[8]*Booker* will, of course, apply at resentencing. *See United States v. Dupas*, 419 F.3d 916, 920-21 (9th Cir. 2005).

GIBSON, Circuit Judge, concurring:

The record demonstrates that the district court in the sentencing colloquy acknowledged the language in, and based its sentencing decision on, paragraph 7 of the Presentencing Investigation Report which contained all of Jennings statements, "I have a gun," the "Just do it now" and "Hurry up" utterances. The court today commences Part I by setting out the full colloquy. It is clear that the district court acknowledged the complete statement, which had been the subject of statements by both the prosecutor and defense attorney, but made the general ruling. "[B]ut I just don't think that the statement was made in the context in which it was made warrants the two level enhancement under Guideline § 2(b)(3)(1)."

It is evident the district court erred. The court's opinion today clarifies the rules applicable to the "I have a gun" utterance.